# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD F. TURNER,** | |
| Plaintiff, | |
| v. | Civil Action No. 13-504 (JEB) |
| **RAND BEERS,** Acting Sec'y, Dept. of Homeland Security, | |
| Defendant. | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Richard Turner, an American citizen, was born in Chicago in 1977. See Compl., Exh. 1 (Turner Letter). He is currently incarcerated in the Stanley Correctional Institution in Stanley, Wisconsin. Id. While residing there, he sent a letter on November 4, 2012, to the United States Customs and Immigration Service attempting to renounce his citizenship. Id. USCIS denied the request because the agency requires people to "appear in person before a properly-designated USCIS officer at a designated USCIS office" in order to renounce their citizenship. See Compl., Exh. 2 (USCIS Letter). As a result of this denial, Turner brought this action against Janet Napolitano, in her capacity at that time as Secretary of the Department of Homeland Security, seeking to force USCIS to accept and process his request. Acting Secretary Rand Beers has moved to dismiss, arguing that Turner's claims under both the Mandamus Act and the Administrative Procedure Act are deficient.

Now that USCIS has agreed to hold Plaintiff's request in abeyance until he is released from prison, the Court will grant the Motion.

## I. Legal Standard

Defendant's Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, LLC. v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d

605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., 402 F.3d at 1253. The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. See Sparrow, 216 F.3d at 1114.

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 54, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## II. Analysis

In moving to dismiss, Defendant argues both that the Court does not have subject-matter jurisdiction to entertain Plaintiff's request for mandamus and that Turner does not state a claim under the Administrative Procedure Act. The Court will address each in turn.

A. Mandamus

"Mandamus is an extraordinary remedy 'reserved for really extraordinary cases,'" In re Bituminous Coal Operators' Ass'n, Inc., 949 F.2d 1165, 1167 (D.C. Cir. 1991) (quoting Ex parte Fahey, 332 U.S. 258, 260 (1947)), and it "is hardly ever granted." In re Cheney, 406 F.3d 723, 729 (D.C. Cir. 2005) (*en banc*). "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation marks and citation omitted). "[A] writ of mandamus will issue 'only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable.'" 13th Reg'l Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931)); Lozada Colon v. U.S. Dep't of State, 170 F.3d 191 (D.C. Cir. 1999) (*per curiam*). "[E]ven if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary," In re Cheney, 406 F.3d at 729, and typically the Court must also "find[] 'compelling . . . equitable grounds.'" In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting 13th Reg'l Corp., 654 F.2d at 760)(alteration in original).

Bearing this standard in mind, the Court begins with the proposition that "Congress has broad authority over the conditions and procedures which must be satisfied to expatriate." Koos v. Holm, 204 F. Supp. 2d 1099, 1107 (W.D. Tenn. 2002); see also Talbot v. Jansen, 3 U.S. 133, 164 (1795) (Iredell, J.) ("it is the duty of the Legislature to make such provision[s]" regarding expatriation). In exercising such authority, Congress has promulgated seven procedures for voluntary expatriation. See 8 U.S.C. § 1481(a)(1)-(7). The first five require that the person

4

seeking renunciation must currently be in a foreign country. See id. § 1483(a) ("Except as provided in paragraphs (6) and (7) of section 1481(a) . . . , no national of the United States can lose United States nationality under this chapter while within the United States . . . ."). These obviously do not apply here.

The last two, conversely, do allow citizens to renounce their citizenship while in the United States. See id. § 1481(a)(6)-(7). As a prisoner in Wisconsin, therefore, these are Turner's only possible recourses. The first, § (a)(6), permits citizens to give up their citizenship by voluntarily

> making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

Although the statute refers to the Attorney General, this authority has since been transferred to the Secretary of Homeland Security. See 6 U.S.C. § 557. The second, § (a)(7), requires "committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States." Not surprisingly, Turner relies on § (a)(6).

The Government does not contest that we are "in a state of war," which is a prerequisite for § (a)(6) to be operative. See Kaufman v. Holder, 686 F. Supp. 2d 40, 43-44 (D.D.C. 2010) (holding that United States was in state of war during 2004 and 2008 for purposes § 1481(a)(6)); cf. Ali v. Obama, No. 11-5102, 2013 WL 6231555, at *1 (D.C. Cir. Dec. 3, 2013) ("The United States is engaged in an ongoing war against al Qaeda, the Taliban, and associated forces."); but see Koos, 204 F. Supp. 2d at 1108 ("the United States is not in a state of war and § 1481(a)(6) is presently inoperative"). The Court will thus assume that the country is in a state of war for the purpose of this Motion.

The only ministerial duty Defendant owed to Plaintiff under § (a)(6) was to "respond[] to his request to renounce his citizenship." Sluss v. U.S. Citizenship & Immigration Servs., 899 F. Supp. 2d 37, 41 (D.D.C. 2012). USCIS did originally respond to Plaintiff's request by sending a letter of denial due to his inability to appear for an in-person interview at a USCIS field office. See USCIS Letter. It has now agreed, at Plaintiff's request, to open his case and hold it in abeyance until his release from prison. See Supp. Br. at 1. Because Defendant has already performed the only ministerial duty it owed to Turner, "the Court has no further function to perform and, therefore, will dismiss the mandamus claim as moot." Sluss, 899 F. Supp. 2d at 41.

The Court notes that this case is nearly identical to both Sluss and Schnitzler v. United States, 863 F. Supp. 2d 1 (D.D.C. 2012), two cases from this District brought by prisoners seeking mandamus to compel USCIS to allow them to renounce their citizenship while incarcerated. There – like here – both courts found that USCIS had performed the only ministerial duty it owed to the prisoners by responding to their requests, and they dismissed the claims as moot. See Sluss, 899 F. Supp. 2d at 41; Schnitzler, 899 F. Supp. 2d at 3. The Court sees no basis here for a different outcome. Given that Turner's mandamus claim is moot, the Court has no jurisdiction to further entertain it. See Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.").

B. APA

In addition to seeking mandamus relief, Plaintiff also asserts that USCIS has violated the APA. Turner contends that USCIS's refusal to process his renunciation request based on its requirement that he appear in person "is in violation of the clear and unambiguous wording of the statute." See Compl., ¶ 13. Plaintiff is indeed correct that the plain wording of the statute

6

does not require a person to visit a USCIS office. "But the statute requires the agency to assess the voluntariness of an applicant's renouncement without stating how such an assessment should occur." Sluss, 899 F. Supp. 2d at 41. USCIS has, therefore, decided to perform such an assessment by requiring "in person [interviews] before a properly-designated USCIS officer at a designated USCIS office." See USCIS Letter. The Court cannot say that such a determination is arbitrary or capricious. See 5 U.S.C. § 706(2)(A). Indeed, citizenship is such a prized asset that USCIS is reasonable to insist on an interview in order to ascertain the *bona fides,* mental competence, and true voluntariness of those who are seeking to renounce. See Sluss, 899 F. Supp. 2d at 41-42 (similarly denying plaintiff's challenge under APA to in-person-interview requirement). In sum, "[w]hile APA cases are typically decided via summary judgment, on a factually developed administrative record, the USCIS' reasonable explanation based on plaintiff's incarceration provides a sufficient record for the Court to find that no APA violation resulted from the USCIS' action." Id. at 42. Plaintiff, therefore, states no claim under the APA.

Turner alternatively asks that his renunciation request be held in abeyance until he is released from prison and may appear for the in-person interview. See Opp. at 7. In an Order of December 4, 2013, the Court required USCIS to justify its refusal to hold Plaintiff's application in abeyance or to agree to do so. See ECF No. 18 at 2. In a Supplemental Brief, Defendant agreed and has "forwarded correspondence to Mr. Turner indicating that his case is now open and being held in abeyance." See Supp. Br. at 1. To the extent that is all Plaintiff seeks, his request is now moot.

**III. Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: December 17, 2013